UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Jenee K. Ciccarelli, Esq. (JC/0693)
Ciccarelli Law, PC
47 Park Ave., Suite 304
West Orange, New Jersey 07052
Phone 973-737-9060
Fax 973-619-0023
jenee@jc-lawpc.com
Attorney for Debtor

In Re:

     Doris L. Pilgrim,

              Debtor.

**Chapter 13**

Case No. 20-13717

Honorable Vincent Papalia

Hearing: July 2, 2020

**CERTIFICATION**

## <u>CERTIFICATION OF JENEE K. CICCARELLI, ATTORNEY FOR DEBTOR</u>

1. I, Jenee K. Ciccarelli, Esq., of Ciccarelli Law, P.C., am the attorney of record for Doris Pilgrim, the ("Debtor") in the above-captioned case.

2. I submit this Certification in support of the Debtor's Objection to Proof of Claim No. 2 filed by LMC Fund I, LLC and Debtor's request to reclassify the claim.

3. On March 3, 2020, the Debtor filed a Voluntary Chapter 13 Bankruptcy with this Honorable Court.

4. On May 7, 2020, LMC Fund I, LLC (hereinafter "LMC") filed a Proof of Claim, known as Claim No. 2 in the amount of $133,175.15.

5. Debtor objects to Claim No. 2 filed by LMC and hereby moves to reclassify said claim from secured to completely unsecured as there is no basis for this claim to be deemed secured.

6. On October 25, 2019, an appraisal was performed on the property located at 25-27 22nd Street, Irvington, NJ.  The property was appraised at $250,000.00.  A true and exact copy of the Appraisal is attached hereto as **Exhibit A**.

7.  On May 12, 2020, Debtor served a Notice of Transmittal, Chapter 13 Plan and Appraisal upon LMC.  Debtor's plan treats LMC's claim as a "strip-off".  A true and exact copy of the Chapter 13 Plan is attached hereto as **Exhibit B**.

8. In light of the foregoing, Debtor requests that the claim filed by LMC, be reclassified as unsecured.

9. I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**WHEREFORE** the Debtor Objects to Proof of Claim No. 2 filed by LMC and requests reclassification of the claim.

    /s/Jenee K. Ciccarelli

Dated: June 11, 2020                          Jenee K. Ciccarelli, Esq.

EXHIBIT A

# REAL ESTATE VALUE ESTIMATE

## SUBJECT

| | | |
|---|---|---|
| Contact **PILGRIM** | Census Tract **132.00** | Map Reference **DIGITAL** |
| Property Address **25-27 22ND STREET** | Check one: ☐ SF ☐ PUD ☐ CONDO ☒ 2-4 Units | |
| City **Irvington** | County **ESSEX** | State **NJ** | Zip Code **07111** |
| Phone No. Res. **N/A** | Loan Amount $ **N/A** | Term **N/A** | Mos. Owner's Est. of Value $ **N/A** |

| No. of Rooms | No. of Bedrooms | No. of Baths | Family room or den | Gross Living Area | Garage/Carport (specify type & no.) | Porches, Patio or Pool (specify) | Central Air |
|---|---|---|---|---|---|---|---|
| 12 | 6 | 3 | ☒ Yes ☐ No | 2,835 Sq. Ft. | 3 car/driveway | 2 porches | ☐ Yes ☒ No |

## FIELD REPORT

### NEIGHBORHOOD

| | | | | | Good | Avg | Fair | Poor |
|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban | ☒ Suburban | ☐ Rural | | | | | |
| Built Up | ☒ Over 75% | ☐ 25% to 75% | ☐ Under 25% | Property Compatibility | ☐ | ☒ | ☐ | ☐ |
| Growth Rate ☒ Fully Dev. | ☐ Rapid | ☒ Steady | ☐ Slow | General Appearance of Properties | ☐ | ☒ | ☐ | ☐ |
| Property Values | ☐ Increasing | ☒ Stable | ☐ Declining | Appeal to Market | ☐ | ☒ | ☐ | ☐ |
| Demand/Supply | ☐ Shortage | ☒ In Balance | ☐ Oversupply | | | | | |
| Marketing Time | ☒ Under 3 Mos. | ☐ 4-6 Mos. | ☐ Over 6 Mos. | | | | | |

Present Land Use **45** % 1 Family **25** % 2-4 Family **10** % Apts. ☐ Condo **20** % Commercial ___ % Industrial ___ % Vacant ___ %

Change in Present Land Use ☒ Not Likely  ☐ Likely  ☐ Taking Place From ___ To ___

Predominant Occupancy ☒ Owner  ☐ Tenant  **-5** % Vacant

S/F Price Range $ **50,000** to $ **300,000+**  $ **250,000** = Predominant Value

S/Family Age **1** yrs. to **150+** yrs. Predominant Age **80** yrs.

Comments including those factors affecting marketability (e.g. public parks, schools, view, noise) **THE SUBJECT IS LOCATED IN A NEIGHBORHOOD WITH MIXED STYLE DWELLINGS. THERE ARE MANY FORECLOSURES, SHORT SALES AND "AS IS" SALES IN THIS MARKET. ADEQUATE ACCESS TO SCHOOLS, LOCAL SHOPPING AND PUBLIC TRANSPORTATION.**

### SUBJECT PROPERTY

| | | Good | Avg | Fair | Poor |
|---|---|---|---|---|---|
| Approx. Yr. Blt. 19 **30** # Units **2** # Stories **THREE** | PROPERTY RATING | | | | |
| Type (det, duplex, semi/det. etc.) **DETACHED** | Condition of Exterior | ☐ | ☒ | ☐ | ☐ |
| Design (rambler, split, etc.) **2 FAMILY** | Compatibility to Neighborhood | ☐ | ☒ | ☐ | ☐ |
| Exterior Wall Mat. **VINYL** Roof Mat. **ASPHALT** | Appeal and Marketability | ☐ | ☒ | ☐ | ☐ |
| Is the property in a HUD-Identified Special Flood Haz. Area? ☒ No ☐ Yes | | | | | |
| Special Energy-Effic. Items **TYPICAL FOR THE AREA** | | | | | |

Comments (favorable or unfavorable incl. deferred maintenance) **QUALITY OF CONSTRUCTION CONSIDERED AVERAGE. 3 CAR GARAGE, 2 PORCHES, PATIO, UNFINISHED BSMT, GAS HEAT, 2 FURNACES**

## MARKET COMPARABLE ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 25-27 22nd St Irvington | 946 Grove St IRVINGTON | | 69 Rosehill Pl IRVINGTON | | 231 Ellis Ave IRVINGTON | |
| Proximity to Sub. | | 0.35 miles SW | | 1.25 miles SW | | 0.12 miles NW | |
| Sales Price | $ | $ 265,000 | | $ 278,000 | | $ 231,000 | |
| Date of Sale and | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Time Adjustment | | 10.05/2018 | | 03/12/2019 | | 08/16/2019 | |
| Location | average | traffic st | +10,000 | average | | average | |
| Site/View | .17 ACRE/AVG | .07 ACRE/AVG | | .09 ACRE/AVG | | .11 ACRE/AVG | |
| Age | 89 | 114 | | 54 | −15,000 | 109 | +25,000 |
| Condition | average | renovated 2019 | −25,000 | renovated 2019 | −25,000 | avg, "as is" | |
| Living Area Rm. Count and Total | Total 12 / B-rms. 6 / Baths 3 | Total 13 / B-rms. 8 / Baths 3 | | Total 12 / B-rms. 6 / Baths 2.1 | +2,000 | Total 12 / B-rms. 5 / Baths 3 | |
| Gross Living Area | 2,835 Sq. Ft. | 2,965 Sq. Ft. | −3,000 | 2,568 Sq. Ft. | +5,000 | 2,454 Sq. Ft. | +8,000 |
| Air Conditioning | NONE | NONE | | NONE | | 2 cac units | −6,000 |
| Garage/Carport | 3 car/driveway | none | +12,000 | 2 car/driveway | +3,000 | 3 car/driveway | |
| Porches, Patio, Pools, etc. | 2 porches | 2 porches none | | patio none | +5,000 | 2 porches none | |
| Special Energy-Efficient Items | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Other | unf bsmt | unf bsmt | | fin bsmt | −10,000 | unf bsmt | |
| Net Adjust. (Total) | | ☐ + ☒ − $ | −6,000 | ☐ + ☒ − $ | −35,000 | ☒ + ☐ − $ | 27,000 |
| Indicated Value Sub. | | $ | 259,000 | $ | 243,000 | $ | 258,000 |

General Comments **SEE ADDENDUM**

| | |
|---|---|
| Completed By **JOHN MACK** | Estimated Value $ **250,000** as of **OCTOBER 26, 2019** |
| Signature | Title **NJ SLREA 42RA00320500** |
| | Date **01/31/2020** |

[Y2K]

## Supplemental Addendum

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | PILGRIM | | | | File No. BL 136  LOT 28 | |
| Property Address | 25-27 22ND STREET | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code  07111 |
| Lender | PILGRIM | | | | | |

INTENDED USER:  THE INTENDED USER OF THIS APPRAISAL INCLUDES THE CLIENT, THE CLIENT'S ATTORNEY AND OR ACCOUNTANT AND ANY THIRD PARTIES.

INTENDED USE:  THE INTENDED USE OF THE APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT FOR BANKRUPTCY PURPOSES.

SCOPE OF WORK:  THE SALES AND INCOME APPROACH TO VALUE WERE USED IN THIS REPORT.  THESE METHODS BEST INDICATE ACTIONS OF THE MARKET FOR THIS TYPE PROPERTY.  THE COST APPROACH TO VALUE WAS REVIEWED BUT NOT UTILIZED DUE TO A LACK OF ADEQUATE LAND SALES TO DEVELOP THE SITE VALUE.

HIGHEST AND BEST USE: THE SUBJECT AS IMPROVED IS A LEGALLY PERMISSIBLE USE BASED ON IT'S CURRENT ZONING.  THE LOT SIZE, SHAPE, PHYSICAL CONDITION AND LAND TO BUILDING RATIO ALLOW THE PRESENT STRUCTURE AND INDICATE A GOOD UTILIZATION OF THE IMPROVEMENTS.  BASED ON CURRENT MARKET CONDITIONS, THE PRESENT USE AND STRUCTURE AS A 2 FAMILY RESIDENCE IS ITS FINANCIALLY FEASIBLE AND MAXIMALLY PRODUCTIVE USE.   THE SUBJECT IS LOCATED IN AN R-2 ZONE. (2 family residential, minimum lot size 2,000 sq ft, the subject;s current use is legal conforming)

BASED ON A REVIEW OF CURRENT RENTAL DATA IN THIS SPECIFIC MARKET THE TOTAL ESTIMATED GROSS MONTHLY RENT $3,500 X GROSS RENT MULTIPLIER (GRM) 70 = $245,000. (comparable rental data on file)

ADJUSTMENT BASED ON $4,000 PER FULL BATH.  GLA BASED ON $20 PER SQUARE FOOT AND ROUNDED.  ALL SALES CONSIDERED IN THE FINAL DETERMINATION OF MARKET VALUE.

THE SUBJECT HAS NOT BEEN SOLD IN THE LAST 36 MONTHS.

THE SUBJECT HAS NOT BEEN LISTED FOR SALE IN THE LAST 12 MONTHS.

DEED TRANSFER FOR 946 GROVE ST ON 10/05/2018, $135,000.

DEED TRANSFER FOR 69 ROSEHILL PL ON 11/07/2018, $176,000.

| | | | |
|---|---|---|---|
| Signature | *John Mack* | Signature | |
| Name | JOHN MACK | Name | |
| Date Signed | 01/01/2020 | Date Signed | |
| State Certification # | | State | State Certification # | | State |
| Or State License # | 42RA00320500 | State  NJ | Or State License # | | State |

# Operating Income Statement

BL 136   LOT 28

## One- to Four-Family Investment Property and Two- to Four-Family Owner-Occupied Property

Property Address

| 25-27 22ND STREET | Irvington | NJ | 07111 |
|---|---|---|---|
| Street | City | State | Zip Code |

General Instructions:  This form is to be prepared jointly by the loan applicant, the appraiser, and the lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an "unfurnished" unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☒ No ☐ | MO-MO | $ 1,500 | $ 1,500 | Electricity | ☐ | ☒ |
| Unit No. 2 | Yes ☐ No ☒ | OWNER | $ 0 | $ 2,000 | Gas | ☐ | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | | $ | $ | Fuel Oil | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | | $ | $ | Fuel (Other) | ☐ | ☐ |
| Total | | | $ 1,500 | $ 3,500 | Water/Sewer | ☒ | ☐ |
| | | | | | Trash Removal | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided).  This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g. Applicant/Appraiser 288/300).  If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item) Income should be based on the current rents, but should not exceed market rents.  When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

## Annual Income and Expense Projection for Next 12 months

| Income (Do not include income for owner-occupied units) | | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|---|
| Gross Annual Rental (from unit(s) to be rented) | (Current) | $ 18,000 | $ |
| Other Income (include sources) | | + | + |
| Total | | $ 18,000 | $ |
| Less Vacancy/Rent Loss | | − 900 ( 5 %) | − ( %) |
| Effective Gross Income | | $ 17,100 | $ |

Expenses (Do not include expenses for owner-occupied units)

| | By Applicant/Appraiser | Lender's Underwriter |
|---|---|---|
| Electricity | | |
| Gas | | |
| Fuel Oil | | |
| Fuel _____ (Type - _____ ) | | |
| Water/Sewer | 1,000 | |
| Trash Removal | | |
| Pest Control | 50 | |
| Other Taxes or Licenses | | |
| Casual Labor | 50 | |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating | 50 | |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living unit. | | |
| General Repairs/Maintenance | 100 | |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses | | |
| These are the customer expenses that a professional management company would charge to manage the property. | | |
| Supplies | | |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 | 800 | |
| Miscellaneous | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total Operating Expenses | $ 2,050 | $ |

Freddie Mac
Form 998 Aug 88

This Form Must Be Reproduced By Seller
Page 1 of 2

Fannie Mae
Form 216 Aug 88

Mack Appraisal Service
Form INC2 – "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Replacement Reserve Schedule

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year - such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc. - should be expensed on a replacement cost basis.

| Equipment | | Replacement Cost | | | Remaining Life | | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|---|---|
| Stoves/Ranges | @ | $ 500 | ea. | ÷ | 20 Yrs. | x | 2 | Units = $ | 50 | $ |
| Refrigerators | @ | $ 500 | ea. | ÷ | 20 Yrs. | x | 2 | Units = $ | 50 | $ |
| Dishwashers | @ | $ | ea. | ÷ | Yrs. | x | | Units = $ | | $ |
| A/C Units | @ | $ | ea. | ÷ | Yrs. | x | | Units = $ | | $ |
| C. Washer/Dryers | @ | $ | ea. | ÷ | Yrs. | x | | Units = $ | | $ |
| HW Heaters | @ | $ 1,000 | ea. | ÷ | 20 Yrs. | x | 2 | Units = $ | 100 | $ |
| Furnace(s) | @ | $ 5,000 | ea. | ÷ | 25 Yrs. | x | 2 | Units = $ | 400 | $ |
| (Other) | @ | $ | ea. | ÷ | Yrs. | x | | Units = $ | | $ |
| Roof | @ | $ 5,000 | | ÷ | 25 Yrs. | x | One Bldg. = | | 200 | $ |

Carpeting (Wall to Wall)                                    Remaining Life

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| (Units) | | Total Sq. Yds. @ | $ | | Per Sq. Yd. | ÷ | Yrs. = | $ | $ |
| (Public Areas) | | Total Sq. Yds. @ | $ | | Per Sq. Yd. | ÷ | Yrs. = | $ | $ |

Total Replacement Reserves. (Enter on Pg. 1)                                        $ 800        $

## Operating Income Reconciliation

$ 17,100 − $ 2,050 = $ 15,050 ÷ 12 = $ 1,254
Effective Gross Income     Total Operating Expenses     Operating Income     Monthly Operating Income

$ 1,254 − $ = $
Monthly Operating Income     Monthly Housing Expense     Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's instructions for 2-4 Family Owner-Occupied Properties

- If Monthly Operating Income is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the subject property to the borrower's stable monthly income.

Underwriter's instructions for 1-4 Family Investment Properties

- If Net Cash Flow is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total monthly housing expense for the borrower's primary residence to the borrower's stable monthly income.

Appraiser's Comments (Including sources for data and rationale for the projections)

JOHN MACK
Appraiser Name                                   Appraiser Signature                    01/31/2020
                                                                                        Date

Underwriter's Comments and Rationale for Adjustments

Underwriter Name                          Underwriter Signature                         Date

Form INC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus.    Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.    (Source: FDIC Interagency Appraisal and Evaluation Guidelines, October 27, 1994.)

*Adjustments to the comparables must be made for special or creative financing or sales concessions.  No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions.  Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction.  Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it.  The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title.  The property is valued on the basis of it being under responsible ownership.

2.  Any sketch provided in the appraisal report may show approximate dimensions of the improvements and is included only to assist the reader of the report in visualizing the property.  The appraiser has made no survey of the property.

3.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4.  Any distribution of valuation between land and improvements in the report applies only under the existing program of utilization. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

5.  The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous waste, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist.  This appraisal report must not be considered an environmental assessment of the subject property.

6.  The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct.  The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

7.  The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and any applicable federal, state or local laws.

8.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

9.  The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgage or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent.  The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

10.  The appraiser is not an employee of the company or individual(s) ordering this report and compensation is not contingent upon the reporting of a predetermined value or direction of value or upon an action or event resulting from the analysis, opinions, conclusions, or the use of this report.  This assignment is not based on a required minimum, specific valuation, or the approval of a loan.

**File No.** BL 136   LOT 28

**CERTIFICATION:**    The  appraiser  certifies  and  agrees  that:

1.    The  statements  of  fact  contained  in  this  report  are  true  and  correct.

2.    The  reported  analyses,  opinions,  and  conclusions  are  limited  only  by  the  reported  assumptions  and  limiting  conditions  and  are  my  personal,  impartial  and  unbiased  professional  analyses,  opinions,  and  conclusions.

3.    Unless  otherwise  indicated,  I  have  no  present  or  prospective  interest  in  the  property  that  is  the  subject  of  this  report  and  no  personal  interest  with  respect  to  the  parties  involved.

4.    Unless  otherwise  indicated,  I  have  performed  no  services,  as  an  appraiser  or  in  any  other  capacity,  regarding  the  property  that  is  the  subject  of  this  report  within  the  three-year  period  immediately  preceding  acceptance  of  this  assignment.

5.    I  have  no  bias  with  respect  to  the  property  that  is  the  subject  of  this  report  or  the  parties  involved  with  this  assignment.

6.    My  engagement  in  this  assignment  was  not  contingent  upon  developing  or  reporting  predetermined  results.

7.    My  compensation  for  completing  this  assignment  is  not  contingent  upon  the  development  or  reporting  of  a  predetermined  value  or  direction  in  value  that  favors  the  cause  of  the  client,  the  amount  of  the  value  opinion,  the  attainment  of  a  stipulated  result,  or  the  occurrence  of  a  subsequent  event  directly  related  to  the  intended  use  of  this  appraisal.

8.    My  analyses,  opinions,  and  conclusions  were  developed,  and  this  report  has  been  prepared,  in  conformity  with  the  Uniform  Standards  of  Professional  Appraisal  Practice  that  were  in  effect  at  the  time  this  report  was  prepared.

9.    Unless  otherwise  indicated,  I  have  made  a  personal  inspection  of  the  interior  and  exterior  areas  of  the  property  that  is  the  subject  of  this  report,  and  the  exteriors  of  all  properties  listed  as  comparables.

10.    Unless  otherwise  indicated,  no  one  provided  significant  real  property  appraisal  assistance  to  the  person(s)  signing  this  certification  (if  there  are  exceptions,  the  name  of  each  individual  providing  significant  real  property  appraisal  assistance  is  stated  elsewhere  in  this  report).

**ADDRESS OF PROPERTY ANALYZED:**    25-27 22ND STREET, Irvington, NJ 07111

**APPRAISER:**    *John Mack*

| | | |
|---|---|---|
| Signature: | | |
| Name: | JOHN MACK | |
| Title: | | |
| State Certification #: | | |
| or State License #: | 42RA00320500 | |
| State: NJ | Expiration Date of Certification or License: | 12/31/2021 |
| Date Signed: | 01/31/2020 | |

**SUPERVISORY or CO-APPRAISER (if applicable):**

| | |
|---|---|
| Signature: | |
| Name: | |
| Title: | |
| State Certification #: | |
| or State License #: | |
| State: | Expiration Date of Certification or License: |
| Date Signed: | |
| ☐ Did  ☐ Did Not  Inspect Property | |

Form ACR2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower/Client | PILGRIM | | | | File No. BL 136  LOT 28 |
|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | |
| City | Irvington | County | ESSEX | State NJ | Zip Code 07111 |
| Lender | PILGRIM | | | | |

# APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

☒ Appraisal Report       (A written report prepared under Standards Rule   2-2(a)   , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted          (A written report prepared under Standards Rule   2-2(b)   , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report       restricted to the stated intended use by the specified client or intended user.)

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no  personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Reasonable Exposure Time       (USPAP defines Exposure Time as the estimated length of time that the property interest being
appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:       WITHIN 6 MONTHS
FOR REALISTICALLY PRICED PROPERTIES.

## Comments on Appraisal and Report Identification
Note any USPAP related issues requiring disclosure and any State mandated requirements:

**APPRAISER:**

Signature: *John Mack*
Name:  JOHN MACK

State Certification #:
or State License #:  42RA00320500
State:  NJ   Expiration Date of Certification or License:   12/31/2021
Date of Signature and Report:   01/31/2020
Effective Date of Appraisal:   OCTOBER 26, 2019
Inspection of Subject:  ☐ None  ☒ Interior and Exterior  ☐ Exterior-Only
Date of Inspection (if applicable):  OCTOBER 26, 2019

**SUPERVISORY or CO-APPRAISER (if applicable):**

Signature:
Name:

State Certification #:
or State License #:
State:   Expiration Date of Certification or License:
Date of Signature:
Inspection of Subject:  ☐ None  ☐ Interior and Exterior  ☐ Exterior-Only
Date of Inspection (if applicable):

## Subject Photo Page

| Borrower/Client | PILGRIM | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | | |



### Subject Front

| | |
|---|---|
| 25-27 22nd St | |
| Sales Price | |
| Gross Living Area | 2,835 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | average |
| View | .17 ACRE/AVG |
| Site | |
| Quality | |
| Age | 89 |



### Subject Rear



### Subject Street

## Subject Photo Page

| Borrower/Client | PILGRIM | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | | |



### Subject Front

| | |
|---|---|
| 25-27 22nd St | |
| Sales Price | |
| Gross Living Area | 2,835 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | average |
| View | .17 ACRE/AVG |
| Site | |
| Quality | |
| Age | 89 |



### Subject Exterior



### Subject Street

# Subject Photo Page

| Borrower/Client | PILGRIM | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | | |



### Subject Rear

25-27 22nd St
Sales Price
Gross Living Area       2,835
Total Rooms             12
Total Bedrooms          6
Total Bathrooms         3
Location                average
View                    .17 ACRE/AVG
Site
Quality
Age                     89



### Subject Rear



### Subject Garage

# Subject Photo Page

| Borrower/Client | PILGRIM | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | | | |
| City | Irvington | County | ESSEX | | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | | | |



### Subject Interior

| | |
|---|---|
| 25-27 22ND STREET | |
| Sales Price | |
| Gross Living Area | 2,835 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | average |
| View | .17 ACRE/AVG |
| Site | |
| Quality | |
| Age | 89 |



### Subject Interior



### Subject Interior

# Subject Photo Page

| | |
|---|---|
| Borrower/Client | PILGRIM |
| Property Address | 25-27 22ND STREET |
| City | Irvington |
| Lender | PILGRIM |

| County | ESSEX | State | NJ | Zip Code | 07111 |
|---|---|---|---|---|---|



### Subject Interior

| | |
|---|---|
| 25-27 22nd St | |
| Sales Price | |
| Gross Living Area | 2,835 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | average |
| View | .17 ACRE/AVG |
| Site | |
| Quality | |
| Age | 89 |



### Subject Interior



### Subject Interior

# Subject Photo Page

| Borrower/Client | PILGRIM | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | | |



### Subject Interior

| | |
|---|---|
| 25-27 22nd St | |
| Sales Price | |
| Gross Living Area | 2,835 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 3 |
| Location | average |
| View | .17 ACRE/AVG |
| Site | |
| Quality | |
| Age | 89 |



### Subject Basement



### Subject Basement

## Comparable Photo Page

| Borrower/Client | PILGRIM | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | |



### Comparable 1

946 Grove St
| | |
|---|---|
| Prox. to Subject | 0.35 miles SW |
| Sale Price | 265,000 |
| Gross Living Area | 2,965 |
| Total Rooms | 13 |
| Total Bedrooms | 8 |
| Total Bathrooms | 3 |
| Location | traffic st |
| View | .07 ACRE/AVG |
| Site | |
| Quality | |
| Age | 114 |



### Comparable 2

69 Rosehill Pl
| | |
|---|---|
| Prox. to Subject | 1.25 miles SW |
| Sale Price | 278,000 |
| Gross Living Area | 2,568 |
| Total Rooms | 12 |
| Total Bedrooms | 6 |
| Total Bathrooms | 2.1 |
| Location | average |
| View | .09 ACRE/AVG |
| Site | |
| Quality | |
| Age | 54 |



### Comparable 3

231 Ellis Ave
| | |
|---|---|
| Prox. to Subject | 0.12 miles NW |
| Sale Price | 231,000 |
| Gross Living Area | 2,454 |
| Total Rooms | 12 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3 |
| Location | average |
| View | .11 ACRE/AVG |
| Site | |
| Quality | |
| Age | 109 |

# Location Map

| Borrower/Client | PILGRIM | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 25-27 22ND STREET | | | | | | |
| City | Irvington | County | ESSEX | State | NJ | Zip Code | 07111 |
| Lender | PILGRIM | | | | | | |



# EXHIBIT B

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

| 0 | Valuation of Security | 0 | Assumption of Executory Contract or Unexpired Lease | 0 | Lien Avoidance |

**Last revised: September 1, 2018**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:                                                           Case No.: _____

   Doris Pilgrim                                              Judge: _____

                       Debtor(s)

## Chapter 13 Plan and Motions

☒ Original                    ☐ Modified/Notice Required          Date:   3/2/2020 _____

☐ Motions Included            ☐ Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS MAY BE AFFECTED

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor.  This document is the actual Plan proposed by the Debtor to adjust debts.  You should read these papers carefully and discuss them with your attorney.  Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*.  Your rights may be affected by this plan.  Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien.  The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate.  An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

---

**The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

---

THIS PLAN:

☐ DOES ☒ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☒ DOES ☐ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☐ DOES ☒ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: _JKC_      Initial Debtor: _dp_      Initial Co-Debtor: _____

**Part 1:    Payment and Length of Plan**

a.  The debtor shall pay $ _____51.97_____ per _____month_____ to the Chapter 13 Trustee, starting on
    _____April 1, 2020_____ for approximately _____36_____ months.

b.  The debtor shall make plan payments to the Trustee from the following sources:

    ☒    Future earnings

    ☐    Other sources of funding (describe source, amount and date when funds are available):

c.  Use of real property to satisfy plan obligations:

    ☐  Sale of real property
       Description:
       Proposed date for completion: _____

    ☐  Refinance of real property:
       Description:
       Proposed date for completion: _____

    ☐  Loan modification with respect to mortgage encumbering property:
       Description:
       Proposed date for completion: _____

d.  ☐ The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.  ☐ Other information that may be important relating to the payment and length of plan:

**Part 2:    Adequate Protection ☒ NONE**

a.  Adequate protection payments will be made in the amount of $ _____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b.  Adequate protection payments will be made in the amount of $ _____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: _____ (creditor).

**Part 3:    Priority Claims (Including Administrative Expenses)**

a.    All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| CHAPTER 13 STANDING TRUSTEE | ADMINISTRATIVE | AS ALLOWED BY STATUTE |
| ATTORNEY FEE BALANCE | ADMINISTRATIVE | BALANCE DUE: $ 2000 |
| DOMESTIC SUPPORT OBLIGATION | | |

b.    Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount: Check one:

☒ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount. | | |

**Part 4:    Secured Claims**

**a. Curing Default and Maintaining Payments on Principal Residence:** ☒ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

**b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears:** ☐ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

**c. Secured claims excluded from 11 U.S.C. 506:** ☐ **NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
|  |  |  |  |  |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments**   ☐ **NONE**

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
| Allied Servicing Corporate | 25-27 22nd Street, Irvington, NJ | $82,801.06 | $250,000 | $275,809 | $250,000 | 0.00 | pro rata and 0.00 |

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

Allied Servicing Corporate

**e. Surrender**  ☒ **NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
|  |  |  |  |

**f. Secured Claims Unaffected by the Plan** ☐ NONE

    The following secured claims are unaffected by the Plan:

Select Portfolio Servicing

**g. Secured Claims to be Paid in Full Through the Plan**: ☒ NONE

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|---|---|---|
|  |  |  |

## Part 5:    Unsecured Claims ☐ NONE

**a. Not separately classified** allowed non-priority unsecured claims shall be paid:

☐ Not less than $ _____ to be distributed *pro rata*

☐ Not less than _____ percent

☒ *Pro Rata* distribution from any remaining funds

**b. Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
|  |  |  |  |

**Part 6:    Executory Contracts and Unexpired Leases  ☐ NONE**

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
| Tenant (2nd Floor) | n/a | Residential | assume | current |

**Part 7:    Motions  ☐ NONE**

**NOTE:  All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal*, within the time and in the manner set forth in D.N.J. LBR 3015-1. A *Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.**

**a.  Motion to Avoid Liens Under 11. U.S.C. Section 522(f).    ☒ NONE**

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

**b.  Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.** ☐ NONE

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|---|---|---|---|---|---|---|
| Allied Servicing Corporate | 25-27 22nd Street, Irvington, NJ | $82,801.06 | $250,000 | $275,809 | 0.00 | $82,801.06 |

**c.  Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☒ NONE

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## Part 8:    Other Plan Provisions

**a. Vesting of Property of the Estate**

☒    Upon confirmation

☐    Upon discharge

**b.  Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

**c. Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:

1) Ch. 13 Standing Trustee commissions

2) Administrative Fees _____

3) Secured Claims/priority claims _____

4) Unsecured _____

**d. Post-Petition Claims**

The Standing Trustee ☐ is, ☒ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

---

**Part 9:   Modification ☐ NONE**

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified: _____.

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
| --- | --- |
|  |  |

Are Schedules I and J being filed simultaneously with this Modified Plan?    ☐  Yes    ☐  No

---

**Part 10:   Non-Standard Provision(s): Signatures Required**

Non-Standard Provisions Requiring Separate Signatures:

☒ NONE

☐ Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, *Chapter 13 Plan and Motions*, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: _____March 2, 2020_____          _____
                                             Debtor

Date: _____          _____
                                             Joint Debtor

Date: _____March 2, 2020_____          _____
                                             Attorney for Debtor(s)